PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DARONNE SHAW, a/k/a Ronne, a/k/a Gerome,

*Defendant-Appellant.*

No. 00-4649

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CR-99-383)

Argued: September 26, 2002

Decided: December 16, 2002

Before MOTZ, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in which Judge Motz and Judge Gregory joined.

## COUNSEL

**ARGUED:** Parks Nolan Small, Federal Public Defender, Columbia, South Carolina, for Appellant. Mark C. Moore, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** Scott N. Schools, United States Attorney, Alfred W. Bethea, Jr., Assistant United States Attorney, Florence, South Carolina, for Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Pursuant to a written plea agreement, appellant Daronne Shaw pleaded guilty to conspiracy to distribute and to possess with intent to distribute cocaine base. The district court determined that Shaw's sentencing range under the United States Sentencing Guidelines was 360 months to life imprisonment, but then departed downward and imposed a 240-month sentence. On appeal, Shaw contends that the district court violated § 5G1.1 of the Guidelines by using a sentencing range of 360 months to life imprisonment, instead of the 240-month statutory maximum, as his starting point for a downward departure. For the reasons that follow, we affirm his sentence.

I.

On April 14, 1999, state and federal law enforcement agents set up a controlled purchase of five grams of crack cocaine from Shaw through a confidential informant. Shaw was arrested immediately after the exchange of drugs and money, and he was charged with conspiracy to distribute and to possess with intent to distribute crack as part of a drug trafficking operation in South Carolina's Florence and Williamsburg Counties. *See* 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999). He was also charged with possession with intent to distribute. *See* 21 U.S.C.A. § 841(a)(1). The indictment did not specify the quantity of drugs involved in either offense.

Shaw entered into a written plea agreement pursuant to which he agreed to plead guilty to the conspiracy charge and the government agreed to drop the possession with intent to distribute charge. Under the terms of the plea agreement, Shaw stipulated that the amount of cocaine base involved in his offense exceeded 1.5 kilograms and agreed that such quantity would yield an applicable base offense level of 38 under § 2D1.1 of the Sentencing Guidelines.[1] *See* U.S.S.G. § 2D1.1(c)(1) (assigning a base offense level of 38 for "1.5 KG or

---

[1]The November 1, 1998, Guidelines apply in this case because they were in effect in August 2000 when Shaw was sentenced. *See* U.S.S.G. § 1B1.11(a).

more of Cocaine Base"). The plea agreement also provided that if Shaw provided substantial assistance to authorities in the investigation or prosecution of others, the government would move for a downward departure pursuant to § 5K1.1 of the Guidelines. *See* U.S.S.G. § 5K1.1 (permitting the sentencing court to depart "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense"). At the plea hearing, the court advised Shaw, based on the amount of drugs involved, that he was facing a potential life sentence. Shaw indicated that he understood the stipulation as to quantity and that he was facing a maximum sentence of life imprisonment.

The presentence investigation report ("PSR") submitted to the district court advised that the conspiracy involved at least 3.05 kilograms of crack cocaine, which resulted in a base offense level of 38. The PSR recommended an upward adjustment of two levels because Shaw was an "organizer, leader, manager, or supervisor" in the conspiracy. *See* U.S.S.G. § 3B1.1(c). The PSR also recommended a three-level downward adjustment for acceptance of responsibility under § 3E1.1. The PSR thus settled upon an adjusted offense level of 37. The district court adopted the PSR's recommended adjustments as well as its conclusion that the total offense level was 37. Shaw's extensive criminal record placed him in criminal history category VI, resulting in a sentencing range of 360 months to life imprisonment.

At the sentencing hearing in August 2000, the district court afforded Shaw an opportunity to object to the proposed sentencing range of 360 months to life, but Shaw voiced no objection. The government then moved for a downward departure based on the substantial assistance provided by Shaw to the government in its investigation and prosecution of certain major suppliers in Shaw's drug trafficking ring. *See* U.S.S.G. § 5K1.1. The court granted the motion, departed downward, and imposed a sentence of 240 months in prison and five years of supervised release. Shaw then filed this appeal.

II.

Ordinarily, our ability to review a district court's decision whether, and to what extent, to depart downward from the sentence required

by the Guidelines is fairly circumscribed. We are not permitted to review a district court's refusal to depart downward from the Sentencing Guidelines unless "the district court was under the mistaken impression that it lacked the authority to depart." *United States v. Carr*, 303 F.3d 539, 545 (4th Cir. 2002) (internal quotation marks omitted). Likewise, we do not have the authority to review the extent to which a district court departs downward unless "the departure decision resulted in a sentence imposed in violation of law or resulted from an incorrect application of the Guidelines." *United States v. Hill*, 70 F.3d 321, 324 (4th Cir. 1995). In this case, the district court granted a substantial downward departure from 360 months, the bottom of Shaw's sentencing range as determined by the district court, to 240 months. Shaw's complaint is that the district court failed to follow § 5G1.1 of the Guidelines, which dictated a sentencing range of 240 months, and thereby deprived him of the benefit of his downward departure because any departure should have *started*, not ended, at 240 months. Essentially, then, Shaw is raising a challenge to the extent of his departure. We may review Shaw's challenge because his position is premised on the theory that the district court misapplied the Guidelines. *See id.*

Under the Sentencing Guidelines, "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a). As we noted earlier, the district court determined that Shaw's sentencing range under the Guidelines was 360 months to life. Shaw argues that because the indictment failed to charge a specific amount of crack in connection with the offenses, the maximum sentence authorized by statute was lower than the guideline range.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Thus, after *Apprendi*, an indictment charging a conspiracy to distribute an unspecified quantity of drugs in violation of § 841(b)(1)(C) exposes the defendant to a maximum sentence of 240 months in prison. *See United States v. Promise*, 255 F.3d 150, 156 (4th Cir. 2001) (en banc), *cert. denied*, 122 S. Ct. 2296 (2002); *United*

*States v. Angle*, 254 F.3d 514, 518 (4th Cir.) (en banc), *cert. denied*, 122 S. Ct. 309 (2001). Shaw contends that § 5G1.1 required the district court to use 240 months, the statutory maximum, as the sentencing range because it was "less than the minimum of the applicable guideline range" of 360 months to life. U.S.S.G. § 5G1.1. According to Shaw, the significant reduction he received in his sentence for the substantial assistance he gave the government was meaningless since he could not have received a sentence of greater than 240 months in any event. Thus, Shaw asks us to return this matter to the district court for it to reconsider the government's downward departure motion in light of the proper sentencing range which would require the sentencing court to start at 240 months, not 360 months, before departing downward under § 5K1.1.

Because Shaw did not raise this objection below, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). In order to establish plain error, Shaw must demonstrate "that an error occurred, that the error was plain, and that the error affected his substantial rights." *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998). Even if Shaw establishes all three requirements, "correction of the error remains within our sound discretion, which we should not exercise unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and alterations omitted).

We agree with Shaw that 240 months was the applicable guideline sentencing range by operation of § 5G1.1(a), and that, as a result, 240 months should have served as the starting point for any downward departure the district court exercised its discretion to grant. *See* U.S.S.G. § 5G1.1 comment. ("This section describes how the statutorily authorized maximum sentence . . . may affect the determination of a sentence under the guidelines. For example, if the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 48 months, the sentence required by the guidelines . . . is 48 months; *a sentence of less than 48 months would be a guideline departure*." (emphasis added)).

For all practical purposes, the government concedes that the district court plainly erred in its determination that Shaw's sentencing range was 360 months to life, and assumes for the sake of argument that the

error affected Shaw's substantial rights. Relying on *United States v. Cotton*, 122 S. Ct. 1781 (2002), the government nevertheless contends that even if Shaw were able to satisfy the first three plain error requirements, the error is not one that would affect "the fairness, integrity or public reputation of judicial proceedings." *Hastings*, 134 F.3d at 239 (internal quotation marks omitted).

In *Cotton*, the Supreme Court considered whether plain error could be established where the defendants received sentences of greater than 240 months on a charge of conspiracy to distribute a "detectable" quantity of cocaine and cocaine base. Because the evidence was "overwhelming and essentially uncontroverted" that the conspiracy involved a quantity of drugs that was greater than the threshold amount required for a maximum sentence of life imprisonment, the Court held that "there was no basis for concluding that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." 122 S. Ct. at 1786 (internal quotation marks and alteration omitted). Instead, "[t]he real threat" to the judicial process "would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 1787. Given this analysis, the Court declined to address whether the error was one that would affect substantial rights.

Unlike the defendants in *Cotton*, Shaw pleaded guilty and stipulated to the amount of drugs involved in the conspiracy — no less than 1.5 kilograms of cocaine base. This amount, of course, exceeds the 50-gram threshold required to expose Shaw to a life sentence. *See* 21 U.S.C.A. § 841(b)(1)(A)(iii). Because Shaw actively agreed that he conspired to distribute this quantity of crack, he is assuredly in a worse position than the *Cotton* defendants, who merely failed to challenge the district court's determination that the threshold quantity was involved. *See Cotton*, 122 S. Ct. at 1786 n.3. Shaw's stipulation provided an "uncontroverted" quantity that was sufficient to subject Shaw to a potential life sentence.

In light of the overwhelming and uncontroverted amount of crack cocaine that Shaw admits in connection with his offense, as well as the fact that Shaw's sentence did not exceed that maximum allowed

for an offense based on drug quantities not alleged in the indictment or proven to a jury,[2] we conclude that any error here is not one that we will exercise our discretion to correct because it does not impugn the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Minore*, 292 F.3d 1109, 1120 (9th Cir. 2002) ("Minore unequivocally admitted in his plea agreement, during his plea colloquy and at his sentencing hearing that he should be held responsible for the first two loads of marijuana. Those first two transactions involved 19,500 pounds (8845 kilograms) of marijuana—a quantity far greater than the 1000 kilograms required to expose Minore to a statutory maximum sentence of life in prison. Because overwhelming evidence existed that Minore trafficked in drug quantities well in excess of those necessary to expose him to a potential life sentence, it is not unfair to hold him to his guilty plea." (footnote omitted)); *United States v. Wallace*, 276 F.3d 360, 369 (7th Cir.), *cert. denied*, 122 S. Ct. 2592 (2002) (holding that fourth *Olano* prong was not satisfied in a case where the sentencing court failed to advise the defendant that the government had to prove drug quantity to a jury beyond a reasonable doubt because the defendant admitted quantity "under oath, both in his stipulation of facts and during the plea colloquy, and conceded at sentencing that the government could prove [the quantity] beyond a reasonable doubt"); *United States v. Perez*, 270 F.3d 737, 740 (8th Cir. 2001), *cert. denied*, 122 S. Ct. 1336 (2002) (failure to advise defendant at plea taking that jury must decide drug quantity did not seriously undermine the fairness, integrity or public reputation of the proceeding where defendant agreed he was responsible for sufficient quantities to subject him to enhanced punishment under § 841(b)(1)(B)).

---

[2]Although we have previously held that the imposition of a 240-month sentence does not generate an *Apprendi* error, *see Angle*, 254 F.3d at 518 ("Because Angle's sentence of 210 months is less than the maximum penalty authorized by the facts found by the jury (240 months, *see* 21 U.S.C.A. § 841(b)(1)(C)), there was no error."), the government does not suggest that the district court properly applied the Guidelines to Shaw's case because the sentence imposed did not exceed the statutory maximum. *See United States v. Piccolo*, 282 F.3d 41, 44 (1st Cir. 2002). Rather, the district court here ended up at 240 months in spite of *Apprendi*, not because of it.

In sum, had the district court imposed a sentence of 360 months (or greater) under these circumstances, we would not have exercised our discretion to notice and correct the error. And, because we would not have corrected the imposition of a 360-month sentence in this context, we certainly cannot say that the district court committed plain error requiring correction in merely using 360 months as the starting point for Shaw's substantial assistance downward departure.

### III.

For the foregoing reasons, we affirm Shaw's conviction and sentence.

*AFFIRMED*