**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

   v.

CLEO GRAHAM, a/k/a Derwick
LaVelle Graham, a/k/a Shawn,

   *Defendant-Appellant.*

No. 01-4186

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-96-44-MU, CA-98-419-3-MU)

Argued: June 5, 2003

Decided: September 15, 2003

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Randolph Marshall Lee, Charlotte, North Carolina, for
Appellant. David Alan Brown, Chief, Criminal Division, Charlotte,
North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr.,
United States Attorney, C. Nicks Williams, Assistant United States
Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Cleo Graham pleaded guilty to a single drug conspiracy charge. Upon motion by the government, the district court departed downward and imposed a sentence of 120 months. Graham appeals, arguing primarily that, because of an *Apprendi* error, the district court misperceived its authority to impose a sentence of less than ten years. We conclude that if an error occurred, it is not an error that warrants correction under plain error review, and we therefore affirm Graham's sentence.

I.

In February 1996, a traffic stop led to the discovery of a hidden compartment containing a significant quantity of cash and narcotics. The driver and passenger of the car thereafter agreed to cooperate with law enforcement authorities. Their cooperation eventually lead to Graham's arrest in connection with a large scale drug-distribution scheme. Graham and other co-defendants were charged with conspiracy to possess with intent to distribute cocaine and crack cocaine. The indictment did not include an allegation of drug quantity.

In January 1997, Graham pleaded guilty to the conspiracy charge under a written plea agreement. The agreement stated that if Graham provided to the government information and assistance that it deemed to be substantial,

> the government may make a motion pursuant to U.S.S.G. § 5K1.1 for the imposition of a sentence below the applicable Sentencing Guidelines. The United States also may, within its sole discretion, move the Court pursuant to 18 U.S.C. § 3553(e) to impose a sentence below any applicable statutory mandatory minimum.

J.A. 29. The plea agreement stated that Graham faced a maximum sentence of life imprisonment, but neither the plea agreement nor the district court during the Rule 11 hearing mentioned a mandatory minimum sentence.

The pre-sentence report recommended that Graham be held accountable for the distribution of more than 4 kilograms of crack cocaine. Graham objected to that recommendation, arguing that he should be held accountable only for the 481.9 grams of crack cocaine involved in two transactions in which Graham admitted participating.

At the October 1997 sentencing hearing, the district court overruled Graham's objection to the drug-quantity calculation but accepted Graham's argument that a two-level firearms enhancement sought by the government was not warranted. The court assigned to Graham a total offense level of 35, which, with Graham's category V criminal history, resulted in a sentencing range of 324-405 months. Granting the government's substantial-assistance motion, the court then departed downward to an offense level of 27, which resulted in a sentencing range of 120-150 months. The court imposed a 120-month sentence, the statutorily mandated minimum sentence for a case involving at least 50 grams of crack cocaine. *See* 21 U.S.C.A. § 841(b)(1)(A) (West 1999 & Supp. 2003). The district court made it clear, however, that it believed the ten-year sentence was too high and that it would have imposed a lower sentence had the government's substantial-assistance motion been pursuant to 18 U.S.C.A. 3553(e) rather than U.S.S.G. § 5K1.1. *See* 18 U.S.C.A. § 3553(e) (West Supp. 2003) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. . . ."); *Melendez v. United States*, 518 U.S. 120, 124 (1996) (concluding that a substantial-assistance motion filed pursuant to U.S.S.G. § 5K1.1 alone does not authorize the district court to impose a sentence less than the statutory minimum sentence; under 18 U.S.C.A. § 3553(e), the government must specifically seek a departure below a statutory minimum sentence). No appeal was taken.

Graham thereafter filed a motion pursuant to 28 U.S.C.A. § 2255, which the district court summarily denied. Graham appealed to this

court. We vacated the district court's order and directed the court to permit Graham to amend his section 2255 motion to include a claim that his attorney was ineffective for failing to note an appeal after Graham was sentenced. In 2001, the district court granted Graham's section 2255 motion and vacated and then reimposed Graham's sentence, thus allowing Graham the opportunity to pursue the direct appeal that is now before this court.

## II.

When Graham was sentenced, case law from this circuit did not require drug quantity to be alleged in an indictment or proven to the jury in order for a defendant to receive one of the quantity-dependent enhanced sentences set forth in section 841(b). *See, e.g.*, *United States v. Dorlouis*, 107 F.3d 248, 252 (4th Cir. 1997). But between Graham's 1997 sentencing and this direct appeal, of course, the legal landscape was significantly altered by the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. This circuit applied the *Apprendi* analysis to section 841 drug prosecutions, concluding that drug quantity must be alleged in the indictment and proved to the jury beyond a reasonable doubt in order to subject a defendant to a sentence longer than the maximum sentence set forth in the section 841(b)(1)(C), which governs cases involving an indeterminate quantity of schedule I and schedule II controlled substances.[1] *See United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt." (footnote omitted)). Because section 841(b)(1)(C) does not include a mandatory minimum sentence (unless the use of the controlled substances

---

[1]For cases involving less than 50 kilograms of marijuana and an indictment that is silent as to quantity, section 841(b)(1)(D) is the applicable "default" provision.

leads to death or serious bodily injury), our post-*Apprendi* cases have made it clear that if drug quantity is not alleged in the indictment, the defendant is not subject to a mandatory minimum sentence. *See United States v. Martinez*, 277 F.3d 517, 529, 530 (4th Cir. 2002) ("Although Count One alleged that Martinez was charged with conspiracy to violate § 841(b)(1)(A), it contained no allegation of drug quantity. It therefore charged a conspiracy to violate § 841(b)(1)(C). . . . For conspiring under § 846 to violate § 841(b)(1)(C), we now know, in light of . . . *Apprendi* . . . that Martinez faced no mandatory minimum sentence and that he faced a maximum potential sentence of twenty years' imprisonment.").

This background sets the stage for the issue now before us. Graham contends that because his indictment did not allege drug quantity, no mandatory minimum sentence was applicable to him. Thus, the district court in fact had authority to depart below 120 months, even in the absence of a section 3553(e) motion from the government. Graham contends that we must vacate his sentence and remand, so that the district court can reconsider the downward departure motion free from the constraints of an inapplicable statutory mandatory minimum sentence. *See, e.g.*, *United States v. Shaw*, 313 F.3d 219, 222 (4th Cir. 2002) ("We are not permitted to review a district court's refusal to depart downward . . . unless the district court was under the mistaken impression that it lacked the authority to depart." (internal quotation omitted)).

The government, however, contends that the Supreme Court's decision in *Harris v. United States*, 536 U.S. 545 (2002), forecloses the argument made by Graham.[2] In *Harris*, the defendant was charged

---

[2]At oral argument, the government abandoned the position it articulated in its appellate brief, conceded error with regard to the applicability of the mandatory minimum sentence, and agreed with Graham that a remand for re-sentencing was warranted. The government's eleventh-hour change of heart does not affect our jurisdiction over this appeal or our responsibility to independently consider the merits of the issue that is properly before us. *See United States v. Brainer*, 691 F.2d 691, 693 (4th Cir. 1982) ("[W]e think it clear that the government's subsequent change of position neither mooted the case nor otherwise transformed it into something less than a case or controversy. To be sure, the arguments

with violating 18 U.S.C.A. § 924(c)(1)(A), which mandates additional imprisonment for use of a firearm during or in relation to a crime of violence or a drug trafficking crime. The statute establishes successively higher mandatory minimum sentences depending on the nature of the use of the gun—five years if the gun was merely used, carried, or possessed in furtherance of the base crime, seven years if the gun was brandished, and ten years if the gun was discharged. *See* 18 U.S.C.A. § 924(c)(1)(A) (West 2000). The question before the *Harris* court was whether *Apprendi* applied to require the jury to make the factual findings as to whether the gun was brandished or discharged. A plurality of the Supreme Court concluded that whether the gun was brandished or discharged are sentencing factors that may constitutionally be made by the court rather than the jury. The plurality explained that *Apprendi* applies to facts that increased the sentence beyond the statutory maximum, but not to facts that merely increase the mandatory minimum sentence. *See Harris*, 535 U.S. at 567-68.

In our view, looking to *Harris* for guidance in this case does not provide an entirely satisfactory answer. As noted above, our post-*Apprendi* cases have established that there is *no* mandatory minimum sentence applicable in section 841 cases where no drug quantity is alleged in the indictment. *See Martinez*, 277 F.3d at 530. This conclusion follows from our view that an indictment that does not include drug quantity alleges a violation of and permits sentencing for only a non-aggravated drug offense.[3] *See United States v. Promise*, 255

---

of counsel are no longer mutually adverse; the government now concedes the correctness of defendant's view of the law and unites in his request that the judgment against him be reversed. But the Supreme Court has said that no confession of error by the government respecting a criminal conviction shall relieve this Court of the performance of the judicial function to examine independently the errors confessed." (internal quotations marks and alteration omitted)); *United States v. Wilson*, 169 F.3d 418, 427 (7th Cir. 1999) ("Notwithstanding the government's agreement with Mr. Wilson, we must evaluate independently Mr. Wilson's claim.").

[3]It is worth emphasizing that it is always error for a district court to impose a sentence exceeding the maximum sentence provided in the statute for an indeterminate quantity of the drug in question if drug quantity is not alleged in the indictment and submitted to the jury, *see Promise*,

F.3d at 156-57; *see also United States v. Cannady*, 283 F.3d 641, 647 (4th Cir. 2002) ("The indictment in this case did not allege the quantity of drugs involved. Thus, under *Apprendi* and *Promise*, Cannady could be convicted and sentenced only for a conspiracy to violate § 841(b)(1)(C)."). Since the non-aggravated drug offenses do not carry mandatory minimum sentences, it is at least arguable that *Harris* is not even applicable to the case at bar.

It may well be, however, that *Harris* has worked a change in our post-*Apprendi* case law with regard to the applicability of a mandatory minimum sentence when no drug quantity is alleged in the indictment. But we need not decide the extent to which *Harris* applies to section 841 cases or the extent to which *Harris* undermines the cases from this circuit stating that there is no mandatory minimum sentence in drug cases where no quantity is alleged in the indictment. Because Graham did not argue below that the mandatory minimum sentence was not applicable to him, we consider the issue under the plain-error standard. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). Assuming that an error in fact occurred, we do not believe that the circumstances of this case warrant the exercise of our discretion to correct the error. *See, e.g.*, *United States v. Carr*, 303 F.3d 539, 543 (4th Cir. 2002) ("[A]n appellate court may correct an error not brought to the attention of the trial court if (1) there is an error (2) that is plain and (3) that affects substantial rights. If all three of these conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (internal quotation marks and alteration omitted)), *cert. denied*, 123 S. Ct. 929 (2003).

As previously mentioned, counsel for Graham conceded that Graham was responsible for more than 480 grams of crack cocaine, a

255 F.3d at 156-57, although the error may not always be corrected on appeal, *see United States v. Mackins*, 315 F.3d 399, 408-09 (4th Cir. 2003) (refusing to correct excessive sentence under plain error review as to defendants who did not properly raise *Apprendi* issue at trial, but remanding for re-sentencing as to defendant who properly raised the issue at trial).

quantity sufficient to trigger the enhanced sentences set forth in section 841(b)(1)(A), including the ten-year mandatory minimum. If there had been no substantial-assistance motion in this case and the district court had sentenced Graham within the Guidelines range of 324 to 405 months, Graham's concession would have provided a sufficient reason for this court to decline to exercise its discretion to correct the sentencing error. *See, e.g.*, *United States v. Soltero-Corona*, 258 F.3d 858, 860 (8th Cir. 2001) ("[G]iven the defendant's admission [at sentencing] of drug quantity, any *Apprendi* error did not seriously affect his sentencing proceeding's fairness, integrity, or public reputation."). Of course, the actual circumstances of this case are different, given that the government did file a motion seeking a downward departure because of the assistance provided by Graham, and the error claimed on appeal is not so much the absolute sentence imposed by the district court, but instead the court's arguably mistaken belief that it was required to impose a ten-year sentence. Nevertheless, we believe that, in light of the concession as to drug quantity, any error in this case does not warrant correction under plain error review.

In *United States v. Shaw*, 313 F.3d 219 (4th Cir. 2003), we were presented with a somewhat similar *Apprendi* problem. In *Shaw*, the district court determined that the defendant's Guidelines sentencing range was 360 months, and the court departed downward to 240 months on the government's substantial-assistance motion. On appeal, the defendant argued that because no drug quantity was alleged in his indictment, his maximum sentence was actually 240 months, and 240 months should have been the starting point, not the ending point, for the downward departure. The defendant argued, in essence, that the *Apprendi* error deprived him of the benefit of the substantial assistance he provided. We rejected this argument because the defendant had pleaded guilty to a quantity that exposed him to a life sentence:

> [H]ad the district court imposed a sentence of 360 months (or greater) under these circumstances, we would not have exercised our discretion to notice and correct the error. And, because we would not have corrected the imposition of a 360-month sentence in this context, we certainly cannot say that the district court committed plain error requiring correc-

tion in merely using 360 months as the starting point for Shaw's substantial assistance downward departure.

313 F.3d at 225.

If the error in *Shaw* did not warrant correction, then we cannot say that the error in this case warrants correction. Unlike the defendant in *Shaw*, Graham in fact received a real benefit from the assistance he provided to the government—a reduction in his sentence from the 324-405 month Guideline range to 120 months. More importantly, Graham conceded responsibility for a quantity of drugs that, at the time he pleaded guilty and was sentenced, exposed him to a ten-year minimum sentence and a maximum sentence of life imprisonment. It is only through a string of unlikely occurrences that Graham is in a position to argue on direct appeal that, by virtue of a Supreme Court case decided three years after he pleaded guilty, the mandatory minimum sentence in fact does not apply to him. Given that Graham has conceded to a drug quantity that in 1997 subjected him to a sentence of ten years to life and that today would also subject him (assuming a properly drawn indictment) to the very same sentence, we simply cannot conclude that any error that might have occurred seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Cf. United States v. Cotton*, 535 U.S. 625, 634 (2002) ("The real threat . . . to the fairness, integrity, and public reputation of judicial proceedings would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial."). Accordingly, we decline to exercise our discretion to correct the sentencing error.

III.

Graham also contends that the government breached its obligations under the plea agreement and that the case should therefore be remanded and the government directed to specifically perform the agreement. In essence, Graham argues that because the plea agreement did not mention a statutory mandatory minimum sentence, there in fact was no applicable mandatory minimum, and the government

breached the plea agreement by failing to correct the district court's belief that it was required to impose a ten-year sentence. We disagree.

Although the plea agreement did not mention that Graham was subject to a minimum sentence, the agreement did state that the maximum sentence Graham faced was life imprisonment, a sentence that was available to Graham only under section 841(b)(1)(A), which also includes the ten-year minimum sentence. *See* 21 U.S.C.A. § 841(b)(1)(A). The agreement's reference to a life sentence thus should have put Graham on notice of the mandatory minimum sentence. And contrary to Graham's argument, the failure to note the existence of a mandatory minimum sentence does not amount to an agreement by the government that in fact no minimum sentence is applicable. But more importantly, the plea agreement's failure to mention a statutory minimum sentence cannot somehow render inapplicable an otherwise applicable statutory minimum sentence. At best, the plea agreement's failure to explicitly set forth all of the consequences of Graham's guilty plea might provide fodder for an argument that Graham's plea was not knowingly entered into, but Graham does not make such an argument on appeal.[4]

Under the plea agreement, the government specifically did *not* obligate itself to file a section 3553(e) motion, which would have authorized the district court to impose a sentence below any applicable statutory minimum, but instead reserved to itself full discretion to determine whether to seek such a departure. Regardless of how he casts the arguments, Graham is in effect trying to hold the government to a promise it never made. We therefore reject Graham's argument that the government breached the plea agreement. *See, e.g.*, *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997) ("The interpretation of plea agreements is guided by contract law, and parties to the agreement should receive the benefit of their bargain."). And because we have concluded that the government did not breach its obligations under the plea agreement, Graham's claim that his attorney was ineffective for failing to object to the abrogation of the plea agreement necessarily fails.

---

[4]Nor does Graham challenge the adequacy of the Rule 11 hearing based on the district court's failure to advise Graham that a mandatory minimum sentence was applicable.

## IV.

Accordingly, for the foregoing reasons, we hereby affirm Graham's sentence.

*AFFIRMED*