**UNITED STATES of America,
Plaintiff,**

v.

**David HAMLER, Jr., Defendant.**

**No. CR. 2:96–00191–10.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 5, 2003.

Michael L. Desautels, Assistant Federal Public Defender, Office of Federal Public Defender, Charleston, WV, for Defendant.

Stephanie L. Ojeda, AUSA, U.S. Attorney's Office, Charleston, WV, for the Government.

## MEMORANDUM OPINION AND STATEMENT OF REASONS

HADEN, District Judge.

Pending is a petition to revoke Defendant's supervised release. On October 20, 2003 came the Defendant, David Hamler, Jr., in person and with counsel, Michael L. Dasautels, Assistant Federal Public Defender, and came the Government, by Assistant United States Attorney Stephanie L. Ojeda. Came also the Probation Officer, Lola I. Toney, for a hearing on the petition.

## I. FACTUAL BACKGROUND

On November 22, 1996 Defendant was named in Count Two of a twenty-four count indictment. He was charged with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. Count Two did not reference a particular quantity of cocaine or cocaine base attributable to either the Defendant or the conspiracy.

Defendant executed a plea agreement on December 18, 1996. Paragraph 3 provided:

**MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Hamler will be exposed by virtue of this guilty plea is as follows:

(a) Imprisonment for a period of not less than 5 years nor more than 40 years.

. . . .

(b) A term of supervised release of at least 4 years and not more than 5 years.

(Plea agmt. ¶ 3 (Dec. 18, 1996).)

Taking a conservative view of the amount of relevant conduct involved, the Court found 18.75 grams of cocaine base attributable to Defendant for sentencing purposes. The presentence investigation report (PSR) provided on its cover page Defendant was subject to "5 to 40 years imprisonment ... [and] 5 years TSR." (PSR at 1.) PSR paragraph 42 also provided "the applicable term of imprisonment is at least five years but not more than forty years." (*Id.* ¶ 42.) Defendant did not lodge any objections to the PSR.

Consistent with the plea agreement and the PSR, the Court sentenced Defendant to a seventy-two (72) month term of imprisonment and five (5) year term of supervised release. Defendant did not appeal. He also never moved for collateral relief pursuant to 28 U.S.C. § 2255.

The Probation Officer petitioned the Court on September 19, 2003 to revoke Defendant's supervised release. The Probation Officer alleged the violation of four conditions governing Defendant's supervision:

1. On August 27, 2003 Defendant tested positive for cocaine, after having previously tested positive on August 6, 2003;

2. On various occasions Defendant failed to comply with instructions to attend counseling and medication reviews;

3. Defendant failed to submit written reports and left his place of residence, the Huntington City Mission Men's Shelter; and

4. Defendant left his place of employment and failed to inform the Probation Officer.

At the hearing on the instant petition, Defendant admitted the allegations. Accordingly, the Court **FOUND** Defendant in violation of the terms of his supervised release. The Court additionally found it would unduly depreciate the seriousness of the violations if the supervised release term were not revoked. The Court accordingly **REVOKED** Defendant's supervised release.

Defendant was provided an opportunity to allocute and did so. Finding no reason to delay imposition of sentence, and there being no objection, the Court sentenced Defendant to a term of fifteen (15) months imprisonment and a forty-five (45) month term of supervised release.

The Court now enters this Memorandum Opinion and Statement of Reasons to explicate its sentence in light of conflicting decisions from our Court of Appeals on a critical matter relating to the imposition of revocation sentences.

## II. DISCUSSION

### A. Statutory Scheme Governing the Sentence Originally Imposed on Defendant

Title 21 U.S.C. § 846 provides "Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Defendant pled guilty to conspiring to violate 21 U.S.C. § 841(a)(1), prohibiting the distribution and possession with intent to distribute cocaine and cocaine base.

Subsection 841(b)(1) sets forth varying penalties for Section 841(a)(1) violations according to the quantity of the particular controlled substance involved. For example, the amount of 18.75 grams of cocaine base originally attributed to Defendant re-

quires a sentence, *inter alia,* of "a term of imprisonment which may not be less than 5 years and not more than 40 years and ... [a] sentence imposed under this subparagraph shall ... include a term of supervised release of at least 4 years in addition to such term of imprisonment." 21 U.S.C. § 841(b)(1)(B). For indeterminate quantities of less than five (5) grams of cocaine base, the "catch-all" provision in subsection 841(b)(1)(C) requires an offender "be sentenced to a term of imprisonment of not more than 20 years and ... a term of supervised release of at least 3 years[.]" 21 U.S.C. § 841(b)(1)(C).

## B. The Decision in Apprendi Following Defendant's Disposition

When Defendant was sentenced, our Court of Appeals did not require drug quantity to be alleged in an indictment for him to receive one of the quantity-dependent, enhanced sentences set forth in subsection 841(b)(1). *See, e.g., United States v. Dorlouis,* 107 F.3d 248, 252 (4th Cir. 1997). Since his original disposition, however, this area of the law has undergone a sea change following the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In *Apprendi,* the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Our Court of Appeals has applied *Apprendi* to Section 841 drug prosecutions, concluding drug quantity must be alleged in the indictment and proven to the jury beyond a reasonable doubt to subject a defendant to a sentence longer than the maximum sentence set forth in the catch-all provision of section 841(b)(1)(C). *See United States v. Promise,* 255 F.3d 150, 156–57 (4th Cir.2001) (en banc) ("*Apprendi* dictates that in order to

authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.,* charged in the indictment and proved to the jury beyond a reasonable doubt." (footnote omitted)).

■ In light of the fact subsection 841(b)(1)(C) does not include a mandatory minimum sentence under most circumstances, it is now clear in this Circuit that if drug quantity is not alleged in the indictment, a defendant is not subject to a mandatory minimum sentence. *See United States v. Martinez,* 277 F.3d 517, 529, 530 (4th Cir.2002)("Although Count One alleged that Martinez was charged with conspiracy to violate § 841(b)(1)(A), it contained no allegation of drug quantity. It therefore charged a conspiracy to violate § 841(b)(1)(C).... For conspiring under § 846 to violate § 841(b)(1)(C), we now know, in light of ... *Apprendi* ... that Martinez faced no mandatory minimum sentence and that he faced a maximum potential sentence of twenty years imprisonment.").

## C. Apprendi's Potential Application in the Revocation Setting

*Apprendi's* impact on the instant case becomes readily apparent when one notes the differing revocation penalties applicable to a defendant depending upon the felony classification of the original offense of conviction.

If Defendant's original offense of conviction is undisturbed by *Apprendi,* he was then, and is now, guilty of a Class B felony pursuant to 18 U.S.C. § 3559(a)(2) (providing Class B felony status for statutes with maximum penalties equaling or exceeding twenty-five (25) years in length). This would have authorized a maximum term of

supervised release of five (5) years, 18 U.S.C. § 3583(b)(1), and a maximum revocation sentence of imprisonment of three (3) years. 18 U.S.C. § 3583(e)(3).

If *Apprendi* somehow operates as a matter of law now to transform that original sentence into one imposed under subsection 841(b)(1)(C), however, the maximum term of supervised release is potentially only three (3) years,[1] 18 U.S.C. 3583(b)(2), and the maximum revocation sentence just two (2) years. 18 U.S.C. § 3583(e)(3). This is so because the maximum term of imprisonment under subsection 841(b)(1)(C) is twenty years, making it a class C, rather than a class B, felony. 18 U.S.C. 3559(a)(3).

### D. *Conflicting Guidance from the Court of Appeals*

Further complicating the inquiry is a confusing line of unpublished decisions from our Court of Appeals. One fork of authority begins with the unpublished opinion in *United States v. Simpson*, No. 00–4929, 2001 WL 1627635, at *3 (4th Cir. Dec.19, 2001). The Court of Appeals held the appellant could not challenge his original conviction and sentence under *Apprendi* in the revocation context because "Simpson cannot now contend that a revocation of his supervised release could only fall within the allowable range for Class C felonies because he pleaded guilty to a Class A felony." *Id.* at *3. Judge Traxler's concurring opinion, however, appeared to address more concretely the substantive defect in appellant's argument:

> Under the law at the time Simpson pled guilty, Simpson could have received a maximum sentence of life in prison even though no drug quantity appeared in the information to which he pled guilty.

There is no question that the normal force and effect of Simpson's having pled guilty to an offense with a maximum punishment of life imprisonment was to make him a Class A felon for purposes of revocation proceedings. *See* 18 U.S.C.A. §§ 3559(a)(1), 3583(e)(3) (West 2000). *Now, in a proceeding that has an independent purpose other than to overturn his original sentence, Simpson seeks to deprive that sentence of its normal force and effect by arguing that it violated Apprendi. That is the very definition of a collateral attack.* Federal sentences, however, are not subject to collateral attack by such means. Rather, "[t]he exclusive remedy for testing the validity of a ... [federal] sentence, unless it is inadequate or ineffective" is a motion under 28 U.S.C.A. § 2255 (West Supp.2001). The bigger problem for Simpson, however, is not that he is attempting to collaterally attack his sentence by the wrong means, but that defendants may not collaterally attack their sentences on *Apprendi* grounds, *see United States v. Sanders*, 247 F.3d 139, 146 (4th Cir.2001) (holding that *Apprendi* does not apply to cases on collateral review), which is effectively what Simpson is attempting to do. *Thus, I would affirm the revocation sentence on the basis that Simpson is attempting to mount an impermissible collateral attack on his original sentence.*

*Id.* at *3 (emphasis added) (citations omitted).

This Court and this judge concurred strongly with Judge Traxler's analysis and quoted his panel opinion in its entirety in *United States v. Greene*, 206 F.Supp.2d

---

1. The Court employs the precatory language in light of one, additional overlay. In *United States v. Pratt*, 239 F.3d 640, 648 n. 4 (4th Cir.2001), the Court of Appeals made the rather stunning observation "a defendant convicted under 21 U.S.C. § 841(b)(1)(C), could, in theory, receive a term of supervised release of up to life." *Id.*

811 (S.D.W.Va.2002). In *Greene*, the Court held:

> In sum, Defendant is seeking prohibited collateral relief under *Apprendi* without reference to the statutory prerequisites or the applicable limitations period. This Court lacks jurisdiction in a revocation proceeding to reclassify the felony offense for which Defendant was previously convicted.

*Id.* at 814. Since *Greene* was decided, it has been relied upon by other courts facing the same question. For example, in its unpublished decision in *United States v. Meacham*, 65 Fed.Appx. 529 (6th Cir. 2003), the Court of Appeals for the Sixth Circuit observed:

> The district court correctly rejected Meacham's attempt to invalidate his original conviction at a supervised release revocation hearing. Meacham's three-year sentence is affirmed. *See United States v. Greene*, 206 F.Supp.2d 811 (S.D.W.Va.2002) (holding the court lacked "jurisdiction in a revocation proceeding to reclassify the felony offense for which Defendant was previously convicted" based on *Apprendi* ).

*Id.* at 533.

Indeed, our Court of Appeals has favorably cited *Greene* on at least two occasions for the proposition *Apprendi* "is not retroactively applicable to the revocation of a term of supervised release." [2] *See United States v. Smith*, 75 Fed.Appx. 919, 920 (4th

Cir.2003); *United States v. Jackson*, 61 Fed.Appx. 877, 878–79 (4th Cir.2003). More importantly, relying on plea agreement and presentence report language, both of these decisions dismissed their respective defendants' arguments that *Apprendi* should limit the maximum, statutory revocation sentence to twenty-four (24), rather than thirty-six (36), months.[3]

The second fork of authority is ironically represented by the Court of Appeals' decision in *Greene* itself. Although the Court of Appeals has seemingly relied upon *Greene* in dicta on at least two occasions, it previously stated in its opinion affirming *Greene* under a plain error analysis that:

> Green's indictment did not allege that he possessed any particular amount of drugs. Therefore, he was only subject to a twenty-year maximum sentence for the underlying conviction and a two-year maximum sentence for revocation of supervised release.
>
> *Thus, we find that Green's fifty-month sentence was error and that the error was plain.*

*United States v. Green,* 57 Fed.Appx. 189 (4th Cir.2003)(emphasis added).[4] Although *Greene* involved a trial and not a plea, other decisions involving pleas illustrate the same, or a similar, analysis. *See, e.g., United States v. Graham,* No. 01–4489, 2002 WL 31236305, at *1–2 (4th Cir. Oct.7, 2002)("We find that the indictment did not adequately allege a threshold drug

---

**2.** In actuality, the Court's conclusion in *Greene* was that Congress had not authorized a federal court to grant collateral relief in the revocation context.

**3.** The Court of Appeals' focus on the plea agreement and presentence report is somewhat confusing. In other settings, the Court of Appeals has stressed the *Apprendi* bar is concerned not so much with plea agreement language as it is with the language employed, or not employed, in the charging instrument. *United States v. Shaw*, 313 F.3d 219, 223 (4th

Cir.2002); *United States v. Cannady,* 283 F.3d 641, 647 (4th Cir.2002)("The *indictment* in this case did not allege the quantity of drugs involved. Thus, under *Apprendi* and *Promise,* Cannady could be convicted and sentenced only for a conspiracy to violate § 841(b)(1)(C).").

**4.** Of further note is the Court of Appeals' failure in *Greene* to mention the unambiguous statutory bar, represented by the exclusive remedy of Section 2255, on awarding collateral relief in the revocation setting.

quantity necessary to charge an enhanced penalty. Therefore, Graham was only subject to a twenty year maximum for the underlying conviction and a two year maximum sentence for revocation of supervised release. Thus, we find that Graham's three year sentence was error and that the error was plain.").[5]

The conflicting authority is even more pressing in this District than in other courts. The Court of Appeals' decision in *Jackson*, which conflicts with its decision in *Greene*, affirmed a judgment entered by the Honorable Joseph R. Goodwin, a member of this Court. Accordingly, a different standard is applicable in the same District, depending upon the assigned judge, as conflicting opinions have been handed down to two different judicial officers. This causes hopeless confusion for the Court, the Probation Office, the Government and the defense bar.

■ In the instant case, the Court follows its original analysis, and that of Judge Traxler, that Congress has not permitted an exception for collateral relief during the revocation process. Such collateral relief is barred in any event as to *Apprendi* challenges.[6] *See United States v. Sanders*, 247 F.3d 139, 151 (4th Cir.2001)(holding *Apprendi* is not retroactively applicable to cases on collateral review). Accordingly, the Court treats Defendant as a Class B felon for revocation purposes.

Should Defendant notice an appeal of the Court's sentence, the Court requests the parties to make the Clerk of the Court of Appeals, or the assigned case manager, aware of the unsettled nature of the question presented herein.

This opinion is published on the Court's website at www.wvsd.uscourts.gov. The Clerk is directed to send a copy of this Memorandum Opinion and Statement of Reasons to counsel of record.

5. Lest any doubt linger about whether decisions like *Graham* might be reconciled with either *Smith* or *Jackson*, which focused on the language of the plea agreements and PSRs providing fair notice of the enhanced penalties, the Court has reviewed the *Graham* plea agreement and it provides the maximum penalties as follows:

Count 1 is a fine of $4 million, or imprisonment for not less than 10 years to life or both such fine and imprisonment, plus a term of supervised release of at least 5 years.

*United States v. Graham*, No. 4:95–CR–32, Memo. of Plea ¶ 3(b) (E.D.N.C. Aug. 20, 1995).

6. Although Defendant did not raise an *Apprendi* claim at the revocation hearing, the Court has addressed the issue. The Court has chosen this course because this issue and others frequently come before the Court of Appeals in a plain error setting, given a defendant's frequent failure to object in the district court followed thereafter by a change of counsel on appeal.