**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                            No. 98-4416

KENNETH ROBERT PEARCE,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                            No. 98-4563

HOMER GRADY CHAPMAN,
Defendant-Appellee.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CR-97-438)

Argued: April 9, 1999

Decided: September 13, 1999

Before MURNAGHAN, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Murnaghan and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** Thomas Ernest Booth, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellant. W. Frank Cantrell, Banner Elk, North Carolina, for Appellee Chapman; Gregory Poole Harris, Columbia, South Carolina, for Appellee Pearce. **ON BRIEF:** J. Rene Josey, United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Kenneth Pearce and Homer Chapman pled guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. At their sentencings, the government made a motion under U.S.S.G.§ 5K1.1 for a downward departure for both defendants based on their substantial assistance, recommending a three-level departure. The district court disregarded the government's recommendation and, claiming a "rare instance" of "total discretion," departed downward 24 levels for Pearce (from level 29 to level 5) and 20 levels for Chapman (from level 29 to level 9). The government appeals, claiming that the district court abused its discretion by considering irrelevant factors, by departing to an unreasonable extent, and by failing to provide an adequate statement of reasons. We agree, and, for the reasons that follow, we reverse and remand for resentencing in accordance with this opinion.

I

Pearce's and Chapman's guilty pleas were based on their conspiracy to purchase one quarter kilogram of cocaine from an undercover government agent. Chapman made the deal to purchase cocaine for $4,500, and he sent Pearce to pick it up and deliver the money. After government agents delivered pseudo-cocaine to Chapman, they arrested both Pearce and Chapman. Thereafter, pursuant to plea agreements, both defendants assisted the government in the investigation of other cases. Accordingly, at sentencing, the government filed

2

a motion for downward departure with respect to each defendant under U.S.S.G. § 5K1.1. It stated that the defendants were "instrumental in assisting law enforcement agents in a particular investigation which resulted in the arrest of another individual who will be prosecuted in either federal or state court." The government acknowledged that each defendant provided this information "at the risk of his personal safety" and that the assistance was "substantial."

At the time of their sentencings, both Pearce and Chapman were classified as career offenders under the Sentencing Guidelines.[1] Pearce had been convicted in April 1985 for importing and possessing with the intent to distribute 980 pounds of marijuana on July 19, 1984. He was also convicted in May 1985 of conspiring to import 5,000 pounds of marijuana during the period from September to December, 1980. Chapman had previously been convicted of participating with Pearce in the July 1984 importation of marijuana. In addition, in August 1988, he was convicted of manufacturing and selling over 200 grams of cocaine. After the South Carolina Supreme Court vacated that conviction, Chapman pled guilty in October 1990 to the lesser offense of possession with intent to distribute cocaine in exchange for time served.

The offense level in this case was 29 for each defendant, calculated by taking a base offense level of 20 plus a 12-level increase for career offender status minus a 3-level reduction for acceptance of responsibility. This offense level of 29, when coupled with a career history category of VI, yields a sentencing range of between 151 and 188 months imprisonment.

_____

[1] Under the Sentencing Guidelines, a person is a "career offender" if, at the time of his conviction for a felony that is a crime of violence or a controlled substance offense committed while he was at least 18, he has previously been convicted of at least two felonies, each of which was either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. A "career offender" is automatically assigned to criminal history category VI, the highest criminal history category. Id.

Pearce's sentencing.

At Pearce's sentencing on April 30, 1998, the government recommended a three-level departure based on Pearce's participation in a controlled drug buy from an individual who was to be prosecuted in state court. This departure would have resulted in an offense level of 26, yielding a sentencing range of 120 to 150 months imprisonment. Pearce, however, requested a departure of 24 levels, from 29 to 5, yielding a sentencing range of 9 to 15 months imprisonment. In support of his request, Pearce's counsel cited Pearce's seven months of assistance to the government, although he conceded that Pearce's utility was limited because of his relative lack of "knowledge of the [narcotics] industry." Counsel also pointed to the fact that Pearce was under supervision that included regular drug testing and that Pearce had successfully completed these tests as well as "each and every task set to him by the pretrial services office." Counsel asserted that Pearce had been "drug-free" for the previous ten years, although this assertion contradicted the presentence report which showed that while Pearce was on special parole from his April 1985 conviction, he tested positive for cocaine twice in 1990 and once in 1992, and positive for amphetamines in 1993. Counsel also noted that Pearce was a "good father," a "good husband," and a "hard worker." Finally, counsel noted that the offenses that made Pearce a career offender occurred more than a decade earlier, suggesting that a downward departure would counterbalance the enhancement caused by Pearce's career offender status.

In response to Pearce's argument, the district court stated, "I understand that once the government makes its motion [for a downward departure under U.S.S.G. § 5K1.1], the court has total discretion. That's -- this is one of the rare instances that a federal judge has discretion which the Congress has completely removed from federal judges." Exercising this claimed "total discretion," the court granted the requested 24-level departure and sentenced Pearce to 10 months of incarceration, one-half of which was to be served in a halfway house.

Chapman's sentencing.

At Chapman's sentencing on July 1, 1998, the government recommended, as it did with Pearce, a three-level departure for his substan-

4

tial assistance. Chapman had made a controlled delivery of pseudo-cocaine to an individual who subsequently pled guilty to federal drug charges based on the transaction. After the government filed its motion for a downward departure, Chapman continued to provide assistance, arranging the controlled buy in which Pearce participated and for which Pearce received a downward departure. The departure recommended by the government would have given Chapman an offense level of 26 and a sentencing range of 120 to 150 months. Chapman, however, requested a departure of 20 levels, from 29 to 9, to give him a sentencing range of 21 to 27 months. In support of this request, Chapman's counsel argued that Chapman's status as a career offender overstated his actual history due to the events surrounding his second conviction. According to counsel, Chapman had initially been convicted of trafficking in cocaine, but this conviction was overturned and remanded without comment by the South Carolina Supreme Court. Chapman remained in jail for several months pending retrial on a new indictment for the lesser charge of possession with intent to distribute cocaine. In the meantime, a federal parole warrant was issued against Chapman because of the vacated state conviction. Chapman agreed to plead guilty to the lesser charge in exchange for a sentence of time served. Counsel suggested that Chapman pled guilty when he had a "defensible" case only to be released from state incarceration and to avoid reincarceration by the federal government for a parole violation.

Counsel also supported his request for a 20-level departure by stating his opinion that "in view of the basic crime that the defendant is charged with, which is a conspiracy to obtain one quarter of a kilo of cocaine, that it requires a substantial downward departure from a level 29 to come back to serve the ends of justice." The government responded that "departure of that magnitude [20 levels] is not warranted [by] the assistance offered by this defendant," and that its recommended three-level departure was consistent with recommendations made in similar cases throughout South Carolina. After hearing both sides, the district court noted its understanding that "once the government moves for downward departure, there is no limitation, save that of reasonableness on the authority of the court." The court then granted a 20-level departure and sentenced Chapman to 24 months in prison.

5

The government filed this appeal, contending that the district court erred in concluding that the government's § 5K1.1 motion gave the court unlimited discretion to depart downward. As a result, the government maintains that the district court based its departures on factors that were unrelated to the defendant's assistance. In addition, the government contends that the extent of the downward departures was unreasonable and that the court failed to support its departure with an adequate statement of reasons.

II

Once the government files a motion for a downward departure under U.S.S.G. § 5K1.1, the district court has broad discretion in deciding whether to depart downward and to what extent, but this discretion is not unlimited. See United States v. Casiano, 113 F.3d 420, 429 (3d Cir. 1997). We review the district court's decision for abuse of discretion. See Koon v. United States, 518 U.S. 81, 100 (1996); United States v. Barber, 119 F.3d 276, 282 (4th Cir. 1997) (en banc). Because a "district court by definition abuses its discretion when it makes an error of law," Koon, 518 U.S. at 100 (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)), our review for abuse of discretion includes the determination of whether the discretion exercised by the district court was "guided by erroneous legal conclusions." Id.

Congress requires that district courts sentence defendants within the range established by the Sentencing Guidelines to the extent applicable. See 18 U.S.C. §§ 3551, 3553(b). It has, however, directed that the Sentencing Guidelines "reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. § 994(n). Congress has even provided that district courts may, on the government's motion, depart below statutory minimum sentences so as to reflect a defendant's substantial assistance. See 18 U.S.C. § 3553(e); 28 U.S.C. § 994(n). The Sentencing Guidelines provide the criteria to guide the sentencing court's discretion in departing downward for substantial assistance. See U.S.S.G. § 5K1.1.

6

Section 5K1.1 provides that upon the government's motion to depart downward, the sentencing court may depart from guideline sentences, taking into account five specified factors, see § 5K1.1(a),[2] as well as other "relevant factors," see § 5K1.1, comment. (backg'd). In every case, and particularly when the "extent and value of the assistance are difficult to ascertain," the court should give "[s]ubstantial weight" to the government's evaluation of the defendant's assistance. U.S.S.G. § 5K1.1, comment. (n.3). In any event, any factor considered by the district court on a§ 5K1.1 motion must relate to the "nature, extent, and significance" of the defendant's assistance. U.S.S.G. § 5K1.1, comment. (backg'd). This holding, which is mandated by the text and purpose of the applicable statutes and the Sentencing Guidelines, is consistent with the law in other circuits that have considered this issue. See, e.g., Casiano, 113 F.3d at 429-30 (stating that in choosing to depart downward on a § 5K1.1 motion, a district court may only consider factors relating to a defendant's cooperation); United States v. Aponte, 36 F.3d 1050, 1052 (11th Cir. 1994) (holding that a court, in considering a § 5K1.1 motion to depart below a statutory minimum, should only consider factors relative to a defendant's substantial assistance); United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993) (holding that a sentencing court may depart from a statutory minimum sentence "only to reflect substantial assistance" by the defendant); United States v. Mariano, 983 F.2d 1150, 1156 (1st Cir. 1993) (holding that in departing from the guideline range on a § 5K1.1 motion, a court may consider mitigating factors "only to the extent that they can fairly be said

_____

**2** The five enumerated factors are:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

> (3) the nature and extent of the defendant's assistance;

> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; [and]

> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

to touch upon the degree, efficacy, timeliness, and circumstances of a defendant's cooperation"); United States v. Valente, 961 F.2d 133, 134-35 (9th Cir. 1992) (holding that a sentencing court may not, on a motion under § 5K1.1, depart downward from a statutory minimum sentence because of defendant's "aberrant behavior"); United States v. Thomas, 930 F.2d 526, 529 (7th Cir. 1991) (concluding that "§ 5K1.1 permits departure only on the basis of the quality of assistance rendered"), overruled on other grounds by United States v. Canoy, 38 F.3d 893 (7th Cir. 1994). The procedural mechanism that permits reviewing courts to monitor these limitations is the requirement that the sentencing court state its reasons for any departure pursuant to a motion under § 5K1.1. See 18 U.S.C. § 3553(c)(2); U.S.S.G. § 5K1.1, comment. (backg'd).

In addition to these statutory restrictions on a district court's discretion in deciding whether and to what extent to grant a § 5K1.1 motion to depart downward, the district court is in every instance required to act reasonably as to the extent of its downward departure. As we noted in United States v. Wilson, 896 F.2d 856 (4th Cir. 1990), while there is no fixed limit on how many levels a court may depart for substantial assistance by the defendant, "the limit of the district court's discretion is the question of whether or not the sentence imposed was reasonable." Id. at 859. "The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing." Williams v. United States, 503 U.S. 193, 203 (1992). A sentence, however, can be upheld on appeal as reasonable "even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure." Id. at 204.

The sentencing court, when deciding the government's motion to depart downward pursuant to U.S.S.G. § 5K1.1, thus faces two distinct limitations on its otherwise broad discretion. First, it may only consider the nature, extent, and significance of the defendant's assistance, and second, the extent of any departure must be reasonable.

III. PEARCE'S SENTENCE

When the district court sentenced Pearce to ten months imprisonment, it did not state the specific reasons on which it based its deci-

8

sion. This omission itself was error. See 18 U.S.C. § 3553(c)(2) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence . . . is outside the [pre-departure guideline] range, . . . the specific reason for the imposition of a sentence different from that[range]"). Even though the district court in this case did not articulate its reasons, the evidence it considered and the arguments counsel made to it reveal much about the district court's reasons for deciding to depart downward 24 levels in this case.

Prior to granting the 24-level departure, the district court heard substantial argument from Pearce's counsel who requested specifically that the court depart 24 levels. Counsel touched only briefly on Pearce's assistance to the government, noting that Pearce had been assisting for seven months but acknowledging that Pearce was not particularly helpful because of his lack of knowledge about the narcotics business. The only other information relating to the nature, extent, and significance of Pearce's assistance was the government's assertion that Pearce's assistance was substantial and its recommendation for a three-level downward departure.

The bulk of defense counsel's argument centered on factors that did not relate to the nature, extent, and significance of Pearce's assistance and that were therefore not relevant under§ 5K1.1. Counsel referred to Pearce's success under pretrial supervision. He described Pearce as a "good father," a "good husband," and a "hard worker" and asked the court "to consider the family history, not just the family history prior to this, but the family history of Kenny[Pearce] over the last months, as well as what's going to happen to Kenny's family over the next 11 to 12 months or over the next ten years." Counsel also implied that Pearce's criminal history did not warrant "career offender" status. He stated that Pearce had been"drug-free" for the previous ten years, a statement that was belied by the presentence report, which showed that on at least four occasions during that period Pearce tested positive for drugs. Counsel advised the court that "when fashioning the appropriate sentence, this court has the discretion to weigh all reliable and all information brought to it to determine whether or not somebody is entitled to a five-level departure or a ten-level departure or a one-level departure." (Emphasis added). Rather than taking exception to this statement as inconsistent with the law,

9

the district court appeared to agree, responding,"I understand that once the government makes its motion, the court has total discretion."

After presenting these arguments on factors that may not properly be considered on a § 5K1.1 motion, defense counsel then issued what can only be described as a thinly veiled invitation for the court to ignore completely the sentencing guidelines:

> I have heard from all of the judges [of the District of South Carolina] that used to be on the bench prior to the [sentencing] guidelines, I have heard each one of them speak of a time when they had discretion, when they could look at a man in the eye and look at his family and look at what he had done since he had been arrested and whether he has tried to make his life better, make the lives of people around him better, whether or not he had worked, whether or not he had provided assistance to the government, look at all that.
>
> At that time, Judge, before 1987, before guidelines, you know, the judge had the discretion to look somebody in the eye -- if it wasn't a mandatory minimum sentence, they had to look somebody in the eye and say, I think this person is someone who has successfully flourished under the structure of home detention. And you could give them home detention, without having to worry about guidelines and sentencing commissions and things like that.
>
> That's where we are, Judge, and that's why we are asking you today to consider the family history [of Pearce]. . . . That's why we are asking you to look at what he has done recently . . . .
>
> We ask you to consider that Judge, just like you could prior to sentencing guidelines.

Reminding a sentencing judge of the "good ole days" when judges did not have "to worry about guidelines and sentencing commissions and things like that" was without question an inappropriate argument. The

10

Sentencing Guidelines are the law, and inviting a judge to ignore them and apply the law as it was more than a decade earlier is improper.

While counsel gave a long, inappropriate legal argument and made repeated references to issues irrelevant to Pearce's substantial assistance, the court did nothing to discourage counsel or to indicate that it would not take into account the irrelevant factors or accept the invitation to ignore the law. Rather, the court's responses indicate that it agreed with counsel that it could ignore the guidelines and consider factors other than Pearce's assistance to the government. The court stated, for example, that "the court has total discretion. . . . [T]his is one of the rare instances that a federal judge has discretion which the Congress has completely removed from federal judges."

Considering the improper arguments made by counsel, which made up the great majority of his comments; the court's permissive response to these improper arguments; the lack of any significant discussion of Pearce's assistance; and the fact that the court failed to perform its statutory duty to state in open court the reasons for its sentence, we can only conclude that the court improperly based its decision in substantial part on factors unrelated to Pearce's assistance to the government. The district court's decision therefore cannot be reconciled with our holding that in considering a downward departure under § 5K1.1, a court may only take into account factors relating to the nature, extent, and significance of the defendant's assistance.

In addition, based on the record presented to the court and the government's evaluation of the appropriate downward departure, we conclude that the 24-level departure granted by the district court was unreasonable. The record supports the conclusion that Pearce aided the government by participating in a single sting operation that led to the arrest of one individual who then was to be prosecuted in state court. There is no evidence that this individual was a particularly important target. Additionally, the record suggests that Pearce was merely a go-between who would not have been able to set up a deal without Chapman's assistance. Even Pearce's counsel conceded that Pearce did not know much about the narcotics business and was therefore of limited use to the government. Moreover, there is no evidence that the district court gave "substantial weight" to the govern-

11

ment's evaluation as required by the sentencing guidelines. See U.S.S.G. § 5K1.1 comment. (n.3). Based on this record about the nature, extent, and significance of Pearce's assistance and the government's evaluation that only a 3-level departure was justified, we can find no record support for imposing a 24-level downward departure. No assistance-related factors justify the "magnitude" of the departure. Williams, 503 U.S. at 204.

Because the district court apparently considered irrelevant factors; failed to give substantial weight to the government's evaluation; failed to give its reasons for departing; and, based on the record, departed to an unreasonable extent, we vacate the sentence and remand for resentencing in accordance with the principles set forth in this opinion.

IV. CHAPMAN'S SENTENCE

Chapman's sentencing proceeding differed in two relevant respects from Pearce's. First, at Chapman's proceeding, there was significant discussion regarding the assistance that Chapman had rendered to the government. Second, the government joined the defense in presenting irrelevant factors, such as Chapman's two recent arrests on domestic violence charges. But Chapman's hearing was similar to Pearce's in that the court entertained argument on factors that were not relevant to deciding the § 5K1.1 motion to depart downward.

With regard to Chapman's assistance, the government told the court that Chapman had advised the government of various individuals with whom he had engaged in previous drug activity. Chapman then agreed to set up and engage in a sham drug transaction with one of the individuals, leading to that individual's arrest and subsequent guilty plea on federal drug charges. When asked by the court whether the sham transaction had placed Chapman in danger, the government acknowledged that "there is a certain level of danger inherent any time a defendant -- I mean a cooperating individual is working at the direction of law enforcement," but indicated that the danger in this case was not particularly great because Chapman was a friend of the person he was setting up and because government agents were monitoring the transaction. Defense counsel then told the court that after the government had made the substantial assistance motion, Chapman

12

had rendered further assistance, setting up the sham transaction that Pearce consummated and for which Pearce received a downward departure. The government conceded that Chapman had indeed set up this transaction and, after prodding from the court, conceded that Chapman's assistance in this second transaction was "substantial." However, the government maintained that this additional assistance did not change the government's recommendation that Chapman receive a three-level downward departure.

Chapman's counsel did not rest solely on the descriptions of Chapman's assistance to justify his request for a 20-level downward departure. He also made an argument based upon the way in which the instant conviction was obtained, asserting that Chapman had been out of "the drug business for some time" and that he was drawn back in by repeated phone calls from a government informant encouraging him to set up a drug deal.

In addition, Chapman's counsel relied on what he claimed were the unusual circumstances surrounding Chapman's 1990 state conviction, which was used as a predicate offense for career-offender status. Chapman's current counsel was joined by Chapman's former counsel who told the court that Chapman's initial South Carolina state conviction for trafficking was overturned by the South Carolina Supreme Court apparently because of evidence of "certain misrepresentations by the government [of South Carolina], and the failure to disclose the confidential informant [used in that case]." He further told the court that Chapman had a defensible case but chose to forego a second trial and plead guilty to a lesser charge of possession with intent to distribute cocaine in exchange for the recommendation that he serve no further time and an understanding that such a plea would satisfy the federal government so that it would not hold a parole violation hearing.

Finally, the court asked the government whether Chapman was more or less culpable than Pearce. The government responded that Chapman was more culpable; the defense argued that the two were similarly culpable and that Chapman's family was a "backbone" of the community.

Although the court entertained all of these arguments regarding factors that are plainly irrelevant to the nature, extent, and signifi-

13

cance of Chapman's assistance to the government, prior to granting the defense's request for a 20-level departure, the court stated as grounds for the sentence only its assessment of Chapman's assistance. During this explanation, the court did not reference the improper factors that defense counsel had argued. Thus, even though there was a substantial discussion about factors that were not appropriate for consideration on a § 5K1.1 motion, because there was also substantial discussion regarding the level of assistance rendered by Chapman and because the court only referenced this later discussion when imposing Chapman's sentence, we will not assume that the court relied on improper factors when granting the 20-level departure.

Nevertheless, as with Pearce, we conclude that a 20-level departure in the circumstances of this case was unreasonable in extent. Chapman participated in a sham drug transaction that the record suggests involved a minimal threat to his safety. He also set up a separate sham transaction which Pearce consummated. Each of these transactions resulted in a single arrest and at least one of them resulted in a conviction. While Chapman's assistance was substantial, as acknowledged by the government, it was not so substantial as to warrant a 20-level departure, particularly when taking into account the government's evaluation that the appropriate level of assistance for Chapman was a three-level downward departure.

The district court appeared to downplay the government's recommendation because it was the result of an internal policy whereby the United States Attorney's office sought to give similar departure recommendations to defendants who had provided similar assistance. We believe, however, that the existence of such a policy credits the government's recommendation because it suggests that the government has made an effort to evaluate the assistance of defendants accurately and consistently and to avoid arbitrary recommendations.

Accordingly, we also vacate Chapman's sentence and remand for resentencing.

V

Chapman contends that even if the circumstances surrounding his guilty plea in the 1990 South Carolina case do not constitute an

14

appropriate factor for consideration on a § 5K1.1 motion, they constitute a relevant consideration for a downward departure under U.S.S.G. § 4A1.3. That section states, "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. . . . The court may . . . therefore consider a downward departure from the guidelines." And we have held that "a district court may, in an atypical case, downwardly depart where career offender status overstates the seriousness of the defendant's past conduct." United States v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991). Such departures, we emphasized, "are reserved for the truly unusual case." Id.

The record shows that Chapman had two prior felony convictions for drug violations that qualify him as a career offender. In 1985, he was convicted in federal court for importation of marijuana and possession of marijuana with intent to distribute and sentenced to five years imprisonment. When he and his associates (one of whom was Pearce) were arrested for these offenses, officers seized 980 pounds of marijuana, a quantity of cocaine,[3] a .38 caliber revolver, two .22 caliber handguns, two fully automatic inoperable machine guns, a silencer, a 21-foot motor boat, two Ford pickup trucks, a travel-trailer, and a 40-foot sailboat. He was indicted on 12 counts, but after he pled guilty to 2 counts, 10 were dismissed.

While on parole for that 1985 conviction, Chapman was again convicted in 1988 by a jury in South Carolina state court of trafficking in between 200 and 400 grams of cocaine. He was sentenced to 25 years in prison and a $100,000 fine. On appeal, the South Carolina Supreme Court reversed this conviction without opinion and remanded the case. Chapman was then reindicted on the charge of possession with intent to distribute cocaine. In October 1990, he pled guilty to this charge and was sentenced to time served, which was 25 months. Chapman now contends that he pled guilty to this charge when he had a "defensible" case only because he wanted to get out of state prison and to avoid problems with his federal parole. Accord-

_____

[3] Chapman's presentence report states that 73 grams of cocaine were seized. Pearce's presentence report, detailing the same incident, states that 7.3 grams of cocaine were seized.

15

ingly, he maintains that to include this offense as a predicate offense for career offender status overstates his criminal history.

In addition to these two qualifying convictions, Chapman also experienced problems complying with conditions of his federal parole. In May 1991, his parole was revoked for reasons not revealed in the record, and a 34-month confinement was imposed. The next month, however, he was reparoled. He subsequently violated his special parole by committing two separate offenses of disorderly conduct and by testing positive for cocaine in September 1996 and May 1997.[4]

Chapman argues that his career offender status overstates his criminal history because his 1990 conviction should not be counted. To make this argument, however, he has to go behind his 1990 conviction. Even if, as he maintains, his case was defensible, a grand jury did reindict him for a drug felony after the Supreme Court reversed his earlier conviction, and he did plead guilty while represented by counsel. Neither this court nor the district court can now retry that case. See United States v. Kirksey, 138 F.3d 120, 124 (4th Cir. 1998) ("Neither Congress nor the Sentencing Commission intended to permit sentencing courts to retry the facts of prior offenses"). And, as a general rule, we will not look behind a conviction. See id. at 124-25 (discussing a limited exception to the general rule that courts will not look behind a conviction in determining career offender status because the sentence enhancement is "based on the official record of prior convictions and not on any reconsideration of the facts"). Moreover, we "never [engage in] a factual inquiry into the facts previously presented and tried." Id. (holding that even when a court looks behind the conviction, it looks only to the charging document and the jury instructions).

_____

[4] Chapman was also convicted in 1980 of possession with intent to distribute marijuana. This conviction resulted in a five-year suspended sentence on the condition that he serve one year. However, because this one-year sentence was imposed more than ten years prior to Chapman's engagement in the instant offense, it is not relevant for career offender classification, and we do not consider it. See U.S.S.G. § 4A1.1(b) comment. (n.2), § 4A1.2(b), (e); see also U.S.S.G. § 4B1.2(c)(2) & comment. (n.3) (stating that a conviction that does not count under § 4A1.1 will not count toward career offender status).

16

With two prior, serious felony drug convictions, as well as his parole violations, Chapman cannot sustain his claim that his record overstates the seriousness of his past conduct or the likelihood of future criminal conduct. Such an argument can be made, perhaps, where a defendant has two relatively minor prior assault convictions that do not suggest that the defendant is truly a"career offender." See Adkins, 937 F.2d at 950-52 (remanding for consideration of a § 4A1.3 departure where defendant had two state law misdemeanor convictions that were classified as felonies under federal law). But we cannot conceive of any drug felony that would be considered minor. See United States v. Brown, 23 F.3d 839, 840-42 (4th Cir. 1994) (holding that a § 4A1.3 departure is not justified by the fact that a prior drug conviction involved a small quantity of drugs); see also Adkins, 937 F.2d at 952 (noting that Congress deemed two types of recidivism, including controlled substances "especially dangerous"). Chapman's prior drug convictions, in particular, are quite serious. Because Chapman has been convicted of drug felonies on two occasions, he was properly classified as a career offender. See  U.S.S.G. § 4B1.1.

VI

In sum, we vacate the sentences of Pearce and Chapman and remand for resentencing to permit the district court to reconsider the government's § 5K1.1 motions for downward departure for substantial assistance in light of this opinion.

REVERSED AND REMANDED FOR RESENTENCING

17