PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

v.

JAMES B. CLAWSON, SR.,

        *Defendant-Appellee.*

No. 10-4568

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:09-cr-00367-LMB-1)

Argued: May 13, 2011

Decided: June 30, 2011

Before TRAXLER, Chief Judge, and SHEDD and
DUNCAN, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Duncan
wrote the opinion, in which Chief Judge Traxler and Judge
Shedd concurred.

---

## COUNSEL

**ARGUED:** David Brian Goodhand, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellant. Nina Jean Ginsberg, DIMUROGINSBERG, PC,

Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. Mac-Bride, United States Attorney, Jay V. Prabhu, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant.

---

**OPINION**

DUNCAN, Circuit Judge:

This appeal arises from the district court's grant of a motion for reduction of sentence for substantial assistance under Federal Rule of Criminal Procedure 35(b). In granting the motion, the court reduced defendant James Clawson's sentence for distribution of child pornography from 96 months' imprisonment to one day. The government argues that the district court exceeded its authority under Rule 35(b) because it did not base its grant of the motion on Clawson's assistance to the government, but instead grounded the reduction solely on the court's concern that Clawson would not receive his preferred medication while in prison. For the reasons that follow, and in concert with the other circuits to have considered the question of whether to grant a Rule 35(b) reduction on grounds other than substantial assistance, we agree.[1] We therefore vacate the sentence and remand for further proceedings.

I.

We briefly review the undisputed facts and procedural history. On October 16, 2009, Clawson appeared before the dis-

---

[1] Although our sister circuits agree that a factor other than cooperation may not justify granting a Rule 35(b) reduction, they differ on whether such factors may be considered in decreasing the *extent* of a reduction. *Compare United States v. Shelby*, 584 F.3d 743, 749 (7th Cir. 2009), *with United States v. Grant*, 636 F.3d 813, 814 (6th Cir. 2011) (en banc). Because the district court here used a factor other than cooperation to justify its threshold grant of the motion, we need not reach that issue.

trict court to enter a guilty plea to the charge of distribution of child pornography in violation of 18 U.S.C. § 2252A(1)(2). Clawson admitted that, as the administrator of an electronic bulletin board dedicated to child pornography, he distributed several thousand images and videos of child pornography.

During the plea colloquy, to determine whether Clawson was entering his plea knowingly and voluntarily, the court asked him whether he was being treated for any physical or mental condition. Clawson responded that he suffered from Attention Deficit Hyperactivity Disorder ("ADHD"), and provided the court a letter from his psychiatrist, Lawrence Zinar, Medical Director of the Mental Health Clinic at the Veterans Health Administration. Dr. Zinar had been treating Clawson for ADHD since 1999. Dr. Zinar's letter explained that Clawson was being treated for ADHD with the drug dextroamphetamine,[2] and that he was also being treated for depression with the drug mirtazepine. Dr. Zinar further noted that "[w]ithout his medications, particularly [dextroamphetamine], he has tended to have mood instability, irritability and problems with his temper as well as problems in concentrating and focusing his attention." J.A. 8. He emphasized that it was "imperative that [Clawson] continue to take his medication regimen." *Id.*

The court asked Clawson whether he had taken his medications that day, and Clawson responded that he had missed one dose. The court then asked him whether he felt affected by the lack of medication, and Clawson responded that he did not. The court ultimately accepted Clawson's guilty plea.

In preparation for Clawson's sentencing, the Probation Office calculated his advisory Guidelines range as 324-405 months, but noted that the statutory maximum for Clawson's

---

[2]Throughout the record and the briefs on appeal, the parties refer to the drug alternatively as "D-Amphetamine Sulfate" and "dextroamphetamine." For the sake of consistency, we will refer to the drug by the latter name in this opinion.

offense was 240 months. In its sentencing memorandum, the government asked that the court sentence Clawson to 240 months. The government also informed the court that, based on Clawson's past substantial assistance in another case, and his potential testimony in an upcoming trial, it would likely file a motion for a reduction of sentence under Federal Rule of Criminal Procedure 35(b). The government asked the court to delay Clawson's surrender date to facilitate his planned cooperation.

Clawson requested that the court sentence him to the statutory mandatory minimum of 60 months. In requesting this sentence, Clawson focused on the fact that imprisonment could interfere with his ADHD treatment. In support of his claim, Clawson submitted a second letter from Dr. Zinar, which stated:

> If [Clawson's] medication regime is disrupted or discontinued, one can only imagine the emotional and psychological perils he will face each day including uncontrollable impulsivity, mood swings and loss of temper, and an inability to follow instructions and established procedures—all with predictable outcomes.

Defendant's Position with Respect to Sentencing, 09-CR-367, Doc. No. 14 at 15 (E.D.Va. January 5, 2010).

On January 8, 2010, the court sentenced Clawson to 96 months' imprisonment, citing his "background, mental health issues, and the nature of the offense," as the reasons for its variation from the guidelines. J.A. 117. The court also recommended that Clawson be assigned to a facility with a special program for mental health treatment so that he could continue to receive ADHD medication. The court asked Clawson's counsel whether she had a particular facility in mind, and counsel responded that she was still awaiting an answer from the Bureau of Prisons ("BOP") regarding whether Clawson

would have access to his medication while in custody. The court delayed Clawson's self-surrender date until April 1, 2010, so that Clawson could "fulfill any testimonial obligations" to the government and so that Clawson's counsel could resolve the medication question with the BOP. J.A. 108, 110.

The government filed its Rule 35(b) motion on March 24, 2010. The motion argued that Clawson "deserve[d] substantial credit for his cooperation" with the government, and requested that the court reduce his sentence by 20%, which would result in a sentence of approximately 76 months. J.A. 121.

That same day, Clawson filed an emergency motion requesting that his April 1 self-surrender date be postponed. The motion indicated that BOP officials had determined that Clawson's ADHD medication, dextroamphetamine, was not on the BOP's National Formulary of approved medications,[3] and that Clawson did not "meet BOP criteria for ongoing treatment for ADHD" with such medication. J.A. 124. The motion further informed the court that the BOP had invited Clawson to provide additional information to the medical staff at the prison facility. Clawson requested "additional time to gather medical evidence relevant to [his] treatment needs." *Id.*

The court held a hearing on the government's Rule 35(b) motion on March 26, 2010. During the hearing, the court

---

[3]The BOP's Chief of Health Programs described the formulary as follows:

> The BOP's formulary is a list of medications that are considered by the organization's professional staff to ensure high quality, cost-effective drug therapy for the population served. Periodically, medications are reassessed and extensively reviewed for inclusion, exclusion, or restrictions in the formulary according to current evidence-based practices and security concerns within the correctional environment.

J.A. 139-40.

explained that whether Clawson would be able to receive his medication would "affect how [it would] address the government's ultimate motion, the Rule 35(b) motion." J.A. 135. The court stated that it wanted to "get the medication issue resolved first" before it decided the motion. J.A. 132. It further explained its concern about Clawson's need for care, stating:

> [S]ince we're in court and I've had a chance to observe Mr. Clawson, even on his medication, he does tend to have a more active interaction with his attorney, to say the least. He would easily have problems in a custodial situation which was regimented.

*Id.* The court found that the BOP's response on the issue seemed "completely unreasonable," especially since Clawson had been treated with the same medication for twenty-one years and Clawson's treating physician was a government doctor from the Department of Veteran Affairs. J.A. 131.

The court noted that without the prescribed medication "the quality of this man's imprisonment will put it at Eighth Amendment violation levels." J.A. 134. It postponed resolution of the government's Rule 35(b) motion and stayed Clawson's self-reporting date "indefinitely until such time as the [BOP] evaluates this defendant's medical situation and provides defense counsel and the government with its medical plan for treatment," which would then need to be submitted to Clawson's treating physician for approval. J.A. 134.

On April 2, 2010, Dr. Jeffery Allen, Chief of the BOP's Health Programs, submitted a letter to the court explaining the BOP's position on Clawson's treatment. He reported that dextroamphetamine was a "Schedule II controlled substance with significant potential for abuse," and was not on the BOP's formulary of approved medications. J.A. 139. He further explained that "the BOP does have other medications available on its formulary for treatment of ADHD and has devel-

oped non-formulary use criteria for treatment of ADHD based on symptom severity." J.A. 140. Dr. Allen also stated that, "[s]hould Mr. Clawson's medical team in the BOP determine that it is necessary to use dextroamphetamine to treat [him], its use can be requested through the non-formulary request process." *Id.* Finally, Dr. Allen observed that "[t]he BOP has successfully managed other inmates with ADHD and depression and can provide Mr. Clawson with medical care appropriate to his diagnosis." *Id.*

The court held another hearing on the Rule 35(b) motion on April 23, 2010. The court indicated that it was dissatisfied with the BOP's approach to Clawson's medical treatment, and that its dissatisfaction would color its decision on the motion. It described its consideration of the motion at some length, explaining:

> There is no question . . . that they're certainly not going to start Mr. Clawson out on the medication that appears to have been working for him all these years. . . .
>
> I'm also concerned . . . that the kind of behavioral problems that would break out in any medical change would make this man's career in the [BOP] impossible.
>
> . . .
>
> I'm also satisfied that this defendant . . . does not in my view pose any real danger to the community that cannot be adequately controlled with appropriate supervision, and so I am going to under the [R]ule 35(b) motion resentence the defendant . . . .

J.A. 152-53. The court proceeded to sentence Clawson to "one day in custody." J.A. 153. It ordered that his one-day incarceration be followed by a period of supervised release of

fifteen years, the first three years of which would be served on home confinement with electronic monitoring.

The government timely objected to the court's ruling, arguing that "the court ha[d] exceeded . . . the role of a [R]ule 35 departure and considered things outside the defendant's cooperation." J.A. 157. The court responded that its decision was based on "an extraordinary medical record" and on the court's belief that "[i]n a prison setting, [Clawson] wouldn't survive." J.A. 158.

This appeal followed.

## II.

Against this background, we proceed to consideration of the parties' arguments on appeal. The government urges that, in deciding whether to grant a Rule 35(b) reduction for substantial cooperation, a court may only consider the defendant's assistance to the government. It therefore asserts that the court erred in reducing Clawson's sentence based on a non-cooperation factor.

Clawson contends that the plain language of Rule 35(b) does not limit the factors that a court may consider when reducing a sentence under that rule. He argues that the court acted within its authority when granting the motion based on its assessment of Clawson's medical needs. He further asserts that, even if we adopt the government's reading of Rule 35(b), the reduction was still justified in his case because the court used it to correct a sentence that would otherwise violate the Eighth Amendment's prohibition against cruel and usual punishment.[4]

---

[4]Clawson also urges that the government's decision to file a motion for reduction based on cooperation after sentencing rather than before sentencing violated his due process rights. He argues that the government's strategy essentially lulled the court into thinking that it would have a later

We first address the scope of the district court's authority under Rule 35(b) and then consider Clawson's constitutional argument. We review both issues de novo. *United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002); *United States v. Rhynes*, 218 F.3d 310, 320 (4th Cir. 2000).

A.

Federal Rule of Criminal Procedure 35(b)(1) allows the court, upon the government's timely motion, to "reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." The rule mentions no factors other than assistance that may be considered in deciding to grant the reduction. Thus, its plain text suggests that a court's ruling on a Rule 35(b) motion rests solely on a finding of whether the defendant provided substantial assistance to the government.

Even if the rule's text were ambiguous, its heading further clarifies the limitations of a Rule 35(b) motion. Although "[t]he title of a statute and the heading of a section cannot limit the plain meaning of the text," they are useful "when

---

opportunity to fully consider the relevant § 3553 factors when deciding the motion. He therefore asks that we vacate his original 96-month sentence. However, Clawson's challenge to his original sentence is not properly before us. Clawson did not file a cross-appeal and "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Thus, we need not address his argument on this point.

Clawson further asserts that the government should be estopped from challenging his sentence because it failed to object at the initial Rule 35(b) hearing, when the district court first signaled its intention to consider § 3553(a) factors in ruling on the motion. However, the government timely objected to the district court's imposition of a sentence that reflected factors other than Clawson's cooperation with the government. Clawson points to no legal principle, nor are we aware of any, that would require the government to anticipatorily object to the court's potential future consideration of improper factors. His claim is without merit.

they shed light on some ambiguous word or phrase." *United States v. Hatcher*, 560 F.3d 222, 226 (4th Cir. 2009) (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947)); *see also United States v. Grant*, 636 F.3d 803, 811 (6th Cir. 2011) (en banc). Here, the rule's heading indicates that a motion under Rule 35(b) pertains to "Reducing a Sentence *for* Substantial Assistance." Fed. R. Crim. P. 35(b) (emphasis added). This heading further supports our determination that substantial assistance is the sole basis on which a Rule 35(b) reduction may rest.

Our reading is consistent with the history of Rule 35(b). As recently as 2001, the rule explicitly mandated that a district court's reduction of a defendant's sentence "*reflect a defendant's subsequent, substantial assistance* in the investigation or prosecution of another person who has committed an offense." Fed. R. Crim. P. 35(b) (2001) (emphasis added); *see also Grant*, 636 F.3d at 824 (noting the language change in 2002). The rule's language was altered in 2002 "as part of the general restyling of the Criminal Rules to make them more easily understood." Fed. R. Crim. P. 35(b), advisory committee's notes, 2002 amendments. However, the advisory committee's notes on the redraft clarified that, with exceptions that are not relevant here, the "changes [we]re intended to be *stylistic only*." *Id.* (emphasis added).

The government's reading of Rule 35(b) is also amply supported by caselaw. Although the Supreme Court has never directly considered the issue before us, it has repeatedly invoked Rule 35(b)'s limited function in other contexts. *See Pepper v. United States*, 131 S. Ct. 1229, 1248 n.15 (2011) ("Rule 35(b) departures address *only postsentencing cooperation with the Government*, not postsentencing rehabilitation generally, and thus a defendant with nothing to offer the Government can gain no benefit from Rule 35(b)." (emphasis added)); *Dillon v. United States*, 130 S. Ct. 2683, 2692 (2010) (noting that "Rule 35 delineates a limited set of circumstances in which a sentence may be corrected or reduced," and that

Rule 35(b) in particular "authorizes a reduction *for substantial assistance* on the Government's motion" (emphasis added)).

Furthermore, those circuit courts that have considered variations on this issue have all rejected Clawson's reading. *See Grant*, 636 F.3d at 813-14; *United States v. Shelby*, 584 F.3d 743, 749 (7th Cir. 2009); *see also United States v. Doe*, 351 F.3d 929, 933 (9th Cir. 2003) (reading an earlier version of the rule to allow a district court to consider factors other than assistance only to the extent that they "may militate against granting a Rule 35(b) reduction" (internal quotations and emphasis omitted)); *United States v. Manella*, 86 F.3d 201, 204 (11th Cir. 1996) (same); *cf. United States v. Poland*, 562 F.3d 35, 36, 41 (1st Cir. 2009) (deferring the "difficult and delicate issue of statutory construction" implicated by Rule 35(b)'s impact on a district court's consideration of factors other than cooperation, but noting that "Congress has never changed the statutory rule that [Rule 35(b)] reductions must reflect only the assistance provided"). These courts based their holdings on the text and history of the rule, as well as the troubling potential consequences of a broader reading.

The Seventh Circuit, for example, found that a broader reading of Rule 35(b) "would almost certainly reduce the number of such motions filed, to the detriment" of all parties involved. *Shelby*, 584 F.3d at 746. The court reasoned that "the government would rarely make such motions any longer, not only because by doing so it would lose control of the sentencing process but also because the proceedings on the motion would be more complex, since the defendant could ask to be resentenced from the ground up." *Id.* at 747. Similarly, the Sixth Circuit, sitting en banc, explained that "focus on § 3553(a) as a starting point for analysis clouds the analytical exercise that the district court must undertake, which is to determine whether the defendant is entitled to a reduction for substantial assistance and, if he is, the extent of the reduction." *Grant*, 636 F.3d at 818. We agree with these courts that

a broad reading of Rule 35(b) would frustrate the purpose of the rule.

For these reasons, we conclude that, when deciding whether to grant a Rule 35(b) motion, a district court may not consider any factor other than the defendant's substantial assistance to the government. Here, it is clear that the district court did not adhere to this principle.

In explaining its approach to deciding Rule 35(b) motions, the court stated: "Once that kind of a motion is filed, my concern is what's the appropriate bottom line sentence for that particular defendant looking at the 3553(a) factors which become more available to the Court especially when there's no longer a mandatory minimum." J.A. 129. When granting the motion, the court made no finding regarding Clawson's assistance to the government. Instead, it based its holding solely on its findings that Clawson would not receive adequate medical care in prison, and that he did not pose a danger to the community. Thus, we hold that the district court exceeded its authority under Rule 35(b) by granting the motion based on factors other than the defendant's cooperation with the government.

## B.

Clawson argues that, regardless of our reading of Rule 35(b), we must nevertheless uphold the reduction because a longer period of incarceration in his case would violate the Eighth Amendment's proscription of cruel and unusual punishment. He relies on the district court's finding that the BOP's plan for his treatment would "impose upon [Clawson] a degree of punishment that would be far more excessive than for the normal person serving a sentence." J.A. 152. He also notes that the court specifically found that, absent a revised treatment plan, "the quality of [his] imprisonment [would] put it at Eighth Amendment violation levels." J.A. 134. Clawson argues that these findings justify the court's holding because

"Rule 35(b) clearly should not be construed to require a court to transgress the protections of the U.S. Constitution." Appellee's Br. at 21.

Clawson relies on *Estelle v. Gamble*, 429 U.S. 97 (1976), in which the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (internal citation omitted). The Court explained that such deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or *intentionally interfering with the treatment once prescribed*." *Id.* at 104-05 (emphasis added). Clawson argues that the BOP's policy in his case violated the Eighth Amendment because it "announc[ed] its intention to interfere with the regimen of treatment that he had been prescribed by his government doctor." Appellee's Br. at 24.

Clawson reads *Estelle* too broadly. In applying *Estelle* to the psychiatric treatment context, we have specifically held that a mere difference of opinion regarding the adequate course of treatment does not give rise to an Eighth Amendment violation. In *Bowring v. Godwin*, 551 F.2d 44 (4th Cir. 1977), we explained:

> The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable.
>
> . . .
>
> Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion.

*Id.* at 47-48; *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983). Other circuits have reached similar conclusions. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."); *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (same); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (same). Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team.

Here, it is clear from the record that the BOP was prepared to reasonably treat Clawson's condition. The BOP Chief of Health Programs' letter to the district court clarified that, although the BOP did not stock dextroamphetamine, it "does have other medications available on its formulary for treatment of ADHD and has developed non-formulary use criteria for treatment of ADHD based on symptom severity." J.A. 140. The letter also explained that "[t]reatment decisions about a particular inmate's plan of care are individualized, following a comprehensive evaluation performed upon the inmate's arrival." *Id.* It further assured the court that if the BOP's medical team determined that dextroamphetamine was necessary to treat Clawson, "its use [could] be requested through the non-formulary request process." *Id.* Finally, it noted that "[t]he BOP has successfully managed other inmates with ADHD and depression and can provide Mr. Clawson with medical care appropriate to his diagnoses." *Id.*

On this record, Clawson's argument that the BOP's response "showed the most profound disrespect and callous disregard" to the treatment plan he had reached with his physician is simply unsupported. Appellee's Br. at 26. To the

contrary, as the government argues, the BOP's letter "reflects [a] plan to carefully develop an individualized treatment regime for Clawson's ADHD based on a review of his medical record, his doctor's treatment recommendations, and a medical screening." Rep. Br. at 7. The mere possibility of a change in treatment based on the professional judgment of a prison's medical team simply does not give rise to an Eighth Amendment violation. As a result, the court's resentencing cannot be justified on constitutional grounds.

## III.

For the reasons stated above, we vacate Clawson's sentence and remand for further proceedings. Because reconsideration of the Rule 35(b) motion by the original sentencing judge would inevitably invite speculation as to whether the medical issue continued to play a role in the ultimate ruling, the case should be reassigned to a new judge on remand.[5]

*VACATED AND REMANDED*

---

[5]In reassigning this matter, we simply follow a protocol we have established in other cases and imply no personal criticism of the trial judge. *See United States v. Guglielmi*, 929 F.2d 1001, 1007-08 (4th Cir. 1991) (noting that we may reassign the case on remand when "reassignment is advisable to preserve the appearance of justice").