**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4760

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARK ULISSES CONCHA,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:15-cr-00141-LCB-3)

Argued:  May 10, 2017                                    Decided:  June 26, 2017

Before TRAXLER, FLOYD, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Traxler wrote the opinion, in which Judge Floyd and Judge Harris joined.

**ARGUED:** Milton Bays Shoaf, Jr., Salisbury, North Carolina, for Appellant.  Randall Stuart Galyon, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

TRAXLER, Circuit Judge:

Pursuant to a plea agreement, Mark Ulisses Concha pleaded guilty to conspiracy to distribute at least five kilos of cocaine. The district court sentenced Concha to 210 months' imprisonment, which the court then reduced to 126 months after granting the government's motion for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on Concha's substantial assistance. Concha appeals, arguing that the district court abused its discretion by considering factors unrelated to his assistance when imposing sentence. We agree that the district court erred, and we therefore vacate and remand for resentencing.

I.

Concha was arrested in 2014 after Arkansas State Police found 43 kilos of cocaine hidden in the tractor trailer he was driving. After his arrest, Concha agreed to cooperate with law enforcement in a controlled delivery of the drugs in North Carolina. After a series of monitored phone calls between Concha and his contacts, Concha delivered six kilos of cocaine from the original shipment and 37 kilos of counterfeit cocaine to Armando Perez at the meeting point near High Point, North Carolina. Officers observed the transaction, followed Concha after the delivery, and tracked the whereabouts of the drugs through a GPS unit hidden in the counterfeit cocaine. Police ultimately arrested Perez and Cristino Parra Medina, who were both indicted with Concha for conspiracy to distribute cocaine.

At sentencing, the district court turned to the presentence report ("PSR") and to the advisory sentencing range of 168-210 months established under the Guidelines.

2

Although the court questioned why the PSR attributed drug quantity to Concha in only two of the twenty drug-running trips to North Carolina that Concha admitted making, the court ultimately adopted the PSR "without change." J.A. 64.

The court then asked to hear from the government on its substantial-assistance motion. The government explained that Concha had begun assisting the government as soon as he was arrested in Arkansas. Concha had assisted the government through his participation in the controlled delivery and by providing information about individuals across the country who were involved in drug trafficking. The government viewed Concha's assistance very favorably, as it asked the district court to use the low end of the Guidelines' range as the starting point and then downwardly depart 50% from that point.

The district court granted the government's motion, concluding that Concha had provided substantial assistance and that the court would depart "from the sentence that the Court would otherwise impose." J.A. 67. The court then stated that it was "really struggling with this because, while he has provided substantial assistance, what it does is shows me the breadth of . . . his involvement in these drug crimes, and it's huge." J.A. 67. The district court explained that it had "seen people with not nearly this culpability go to jail for extended periods of time," and that the court was therefore "struggling with the 50 percent reduction [and] with the low end of the guidelines." J.A. 67.

The government again explained its view of the case, noting that Concha placed himself in personal danger by going forward with the controlled delivery; that Concha began cooperating with the government at the first opportunity; and that Concha had provided other valuable information, such as identifying the locations of various stash

houses across the country. Defense counsel noted that Concha did not have a substantial criminal record and that he operated a successful trucking company. Counsel argued that the drug operation had roots in the Sinaloa region of Mexico, and that Concha had placed himself at great personal risk by agreeing to cooperate.

The district court then reiterated its concerns:

> The problem I have with this is he's given the opportunity to [cooperate with the government] because he was so high up and because he was driving so much drugs and he was dumping that crap here in Winston-Salem, and we send people to jail every day for .6 grams of drugs, and it is massive amounts of drugs, and . . . in terms of the equity in sentencing, . . . I can tell you I am not going to the low end, and I am still struggling with whether or not I am going to do the actual total 50 percent.
>
> I agree that he has done substantial things for the Government, and, certainly, I will consider a Rule 35 at a later time if we see prosecutions come out of this work that he has done, but I am trying to make this make sense in the context of all of these folks that we sentence in this courtroom every day for amounts that – I mean, he wants to be with his family, but he has destroyed families dumping that junk in this community at the level that he was dumping that junk in this community.

J.A. 75-76. When the government noted that it was still pursuing leads from Concha's information, the district court noted that "he's got more incentive if he is looking at a Rule 35. He's got more incentive to continue to cooperate." J.A. 76.

After hearing again from the government and counsel for Concha, the district court announced its sentence. Under the Guidelines, Concha's advisory sentencing range was 168-210 months, and the court determined that a pre-departure sentence of 210 months was "sufficient but not greater than necessary to meet the sentencing objectives of Section 3553(a)." J.A. 78. When discussing the § 3553(a) factors, the district court noted that Concha's crime "is not only serious, but the injury to the community as a result

4

of his conduct is immeasurable." J.A. 79. The court stated that Concha was a part of "a sophisticated drug trafficking operation which involved large amounts of cocaine hydrochloride," and that "the amount of drugs attributed to Mr. Concha is vastly understated." J.A. 79. The court then noted that, "though it is not a factor related to the guidelines sentence prior to the adjustment, . . . even Mr. Concha's description of his cooperation supports a conclusion that Mr. Concha has been involved in a much larger conspiracy beyond that stated in the offense conduct and that his conduct is of greater magnitude." J.A. 79-80. Without any further discussion of Concha's cooperation or the government's recommendation, the district court sentenced Concha to 126 months' imprisonment, a 40% reduction from the 210-month sentence that the court otherwise would have imposed.

## II.

Concha raises a single issue on appeal. He contends that the district court abused its discretion by considering factors unrelated to his cooperation when determining the extent of the substantial-assistance departure.[*]

---

[*] We reject the government's argument that we lack jurisdiction over this appeal. As we have explained, this court "do[es] not have the authority to review the extent to which a district court departs downward unless the departure decision resulted in a sentence imposed in violation of law or resulted from an incorrect application of the Guidelines." *United States v. Shaw*, 313 F.3d 219, 222 (4th Cir. 2002) (internal quotation marks omitted). Because Concha contends that the district court misapplied the law governing substantial-assistance departures, we have jurisdiction over this appeal. *See id.* at 222-23 ("We may review Shaw's challenge [to a § 5K1.1 departure] because his position is premised on the theory that the district court misapplied the Guidelines.").

If the government seeks to reward a cooperating defendant, it may proceed under § 5K1.1 of the Sentencing Guidelines, which authorizes a departure from the Guidelines for a defendant who "has provided substantial assistance in the investigation or prosecution of another person." U.S.S.G. § 5K1.1 (2015). If requested by the government, the district court may reduce the sentence below an otherwise-applicable statutory mandatory minimum "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). Alternatively, the government may proceed under Rule 35(b) of the Federal Rules of Criminal Procedure, which authorizes the reduction of a previously imposed sentence for a defendant who provides "substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1); *see* Fed. R. Crim. P. 35(b)(4) ("When acting under Rule 35(b), the court may reduce the sentence to a level below the minimum sentence established by statute.").

Rule 35(b) states that the district court "may consider the defendant's presentence assistance," Fed. R. Crim. P. 35(b)(3), but it otherwise provides no guidance on the matters that the court may consider when evaluating a motion filed under the rule. The Guidelines, however, do specify factors to be considered when evaluating a substantial-assistance motion under § 5K1.1:

> The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

6

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

Regarding departures under Rule 35(b), this court has explained that, when making the threshold decision of *whether* to grant a departure, the district court may consider only factors related to the defendant's assistance, *see United States v. Clawson*, 650 F.3d 530, 537 (4th Cir. 2011), but that the court may take other factors into account when determining the *extent* of the departure, *see United States v. Davis*, 679 F.3d 190, 195-96 (4th Cir. 2012). As to § 5K1.1 departures, however, our case law requires a district court determining the extent of such a departure to consider assistance-related factors *only*. *See United States v. Pearce*, 191 F.3d 488, 492 (4th Cir. 1999) ("[A]ny factor considered by the district court on a § 5K1.1 motion must relate to the nature, extent, and significance of the defendant's assistance." (internal quotation marks omitted)). A court acting under § 3553(e) to reduce a sentence below a statutory minimum must likewise consider only assistance-related factors when determining the extent of the departure. *See United States v. Spinks*, 770 F.3d 285, 287 (4th Cir. 2014) ("[T]he extent of a § 3553(e) departure below a mandatory minimum must be based solely on a defendant's substantial assistance and factors related to that assistance.");

7

*United States v. Hood*, 556 F.3d 226, 234 n.2 (4th Cir. 2009) ("[I]n determining the extent of a departure below a statutory minimum a district court should look to the substantial assistance factors listed in U.S.S.G. § 5K1.1(a).").

In this case, the government sought a sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), but the district court considered factors unrelated to Concha's assistance when determining the extent of the departure. Although the court asked questions about the extent of Concha's assistance, the prosecutions he had aided, and the possibility of a subsequent Rule 35(b) motion, the court agreed that the assistance Concha provided was substantial. *See* J.A. 67 ("The Court does find that Mr. Concha has provided substantial assistance to the Government . . . ."); J.A. 75 ("I agree that he has done substantial things for the Government . . . ."). The court nonetheless had concerns about the 50% departure sought by the government. When explaining its concerns, the court never suggested that the extent or quality of Concha's assistance was insufficient to merit a 50% reduction. Instead, the district court pointed to the scope of the charged conspiracy and the level of Concha's culpability as to that conspiracy, *see* J.A. 67, 75, 79-80; questioned the equity of giving Concha a sentence lower than is often imposed on defendants "with not nearly this culpability," J.A. 67, 75; and condemned the destructive effect of the "junk" that Concha was "dumping" on the community, J.A. 75. These concerns, which focus on facts related to the charged conspiracy, simply bear no "relat[ion] to the nature, extent, and significance of the defendant's assistance." *Pearce*, 191 F.3d at 492 (internal quotation marks omitted)).

8

The government suggested at oral argument that the district court focused on Concha's criminal culpability for purposes of determining where (within the Guidelines range) Concha's pre-departure sentence should be placed. The facts identified by the district court are clearly relevant to the pre-departure sentencing determination, *see* 18 U.S.C. § 3553(a), and the district court properly took those facts in account when selecting the 210-month sentence. Nevertheless, it is clear from the record that the district court *also* took those facts into account when determining the extent of the substantial-assistance departure. *See* J.A. 67 (explaining that court was "struggling with the 50 percent reduction [and] with the low end of the guidelines" because of Concha's "huge" "involvement in these drug crimes"); J.A. 75 (explaining that because Concha "was so high up and . . . was driving so much drugs," the court was not "going to the low end, and [was] still struggling with whether or not I am going to do the actual total 50 percent").

## III.

As we explained in *Pearce*, "any factor considered by the district court on a § 5K1.1 motion must relate to the nature, extent, and significance of the defendant's assistance." 191 F.3d at 492 (internal quotation marks omitted). The district court therefore abused its discretion by considering facts relating to Concha's culpability for the charged conspiracy when determining the extent to which it would depart from the Guidelines' sentence. Accordingly, we hereby vacate Concha's sentence and remand for resentencing.

<u>VACATED AND REMANDED</u>

9